Grasso, J.
INTRODUCTION
The gravamen of the plaintiff Jane Doe’s complaint is that while she was a resident of a Harbor Schools, Inc. (“Harbor Schools”) group home in West Newbury, the defendant Glenn Freeman (“Freeman”), the home’s supervisor and her one-on-one counselor, established an inappropriate sexual relationship with her. Due to her vulnerability and dependence .upon Freeman, Doe maintains that she was unable to appreciate that the behavior, to which she consented at the time, was wrong and harmful to her. Plaintiff contends further that Harbor Schools was negligent in supervising its employee Freeman and in allowing the inappropriate relationship to develop. Defendants Freeman and Harbor Schools, respectively, seek summary judgment on the various counts of the complaint against Freeman for assault and battery (Count I), Negligence (Count II), and Intentional Infliction of Emotional Distress (Count III); and against Harbor Schools for Negligent Supervision (Count V).
Each defendant claims entitlement to judgment a matter of law because Doe failed to file her action within the applicable limitations period, here the three-year statute of limitations for actions in tort. G.L.c. 260, §2A.[5] Plaintiff responds that the statute of limitations should not apply in this case because her cause of action did not accrue until the summer of 1994 when she was first able to discover that she had suffered an injury as a result of Freeman’s conduct. Consequently, she contends that her filing of this action on January 23, 1997, was within the statute of limitations.
On June 28, 2000, the parties were before the court for hearing on defendants’ respective motions for summary judgment. After hearing and consideration of the arguments and submissions of the parties, and for the reasons which follow, Freeman’s and Harbor Schools’ motions for summary judgment are ALLOWED.
BACKGROUND
For purposes of deciding this motion, the court views all facts in the light most favorable to the plaintiff Doe. Riley v. Presnell, 409 Mass. 239, 241 (1991). The relevant facts are these: In April of 1992, when Doe was seventeen years old,[6] DSS placed her at a group-residential home in West Newbury run by Harbor Schools, a DSS provider. At the time of placement, Doe had a history of being sexually and physically abused. She had run away from her mother’s home at the age of 15, alleging that her mother had beaten her severely. DSS then placed her in a variety of foster homes and residential schools. Doe was forced to leave one of these foster homes because she alleged that she had been raped by her foster mother’s boyfriend.
Upon Doe’s placement at Harbor Schools, Freeman, the home’s adult supervisor, became her one-on-one counselor. Although Freeman was supposed to meet with Doe only once a week, from the beginning, he met with her more than two times a week, often in Doe’s bedroom. Because Doe understood that she was expected to confide in and rely on Freeman, she interacted only with him, and was not able to form a trusting relationship with her therapist or with other Harbor Schools personnel. While acting as Doe’s one-on-one counselor, Freeman gradually began to see her several times a week, taking her out for dinner together with his wife and giving her driving lessons.
By the fall of 1992, Freeman was seeing Doe about three times a week. During these sessions, he would hug her and massage her back and shoulders. By the spring of 1993, Freeman was kissing Doe and telling her that he loved her. Doe alleges that in May and June *18 of 1993, when Doe was eighteen years old, Freeman twice caused her to perform oral sex. In June of 1993, following these sexual incidents, Doe suggested to Freeman that they “just be friends.”
In June of 1993, Doe moved from the Harbor Schools’ West Newbury group home to Harbor Schools’ “Safe Harbor” independent living program with Allison Beatty, an employee of Harbor Schools. Freeman no longer served as her one-on-one counselor. Doe felt very isolated in the new placement, and made a suicide attempt on or around June 20, 1993. Doe was then hospitalized in the psychiatric ward of the Anna Jacques Hospital, where Freeman telephoned her daily.
In July of 1993, Doe suggested to Freeman that they not see one another again. In or around November of 1993, Doe arranged to meet Freeman at aBurger King, where she told him that she did not want to see him again “because he was causing her problems of an emotional nature.”
In spring of 1994, Freeman again began contacting Doe, telling her he wanted to see her.
Doe did not tell anyone about her sexual contacts with Freeman until she told her boyfriend in July of 1994. Doe filed this action on January 23, 1997.
DISCUSSION
Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Kourouwacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Under Mass.R.Civ.P. 56(c), summary judgment is appropriate “only when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.” See Riley v. Presnell, 409 Mass. 239, 244 (1991). In this case, defendants argue that they are entitled to judgment as a matter of law because plaintiff failed to file her action within the three years required by G.L.c. 260 §2A.
Because Doe filed her complaint on January 23, 1997, to be within the statute her cause of action must have accrued no later than January 22, 1994. For purposes of this motion, defendants contend that Doe’s cause of action accrued in June of 1993, or at the latest in November of that year, when she told Freeman that she no longer wished to see him because he was causing her emotional harm. Doe responds that defendants are not entitled to summary judgment because the question of when her cause of action accrued, that is when she knew or should have known of her cause of action, is a question of fact. See Phinney v. Morgan, 39 Mass.App.Ct. 202, 209 (1995).[7]
When a cause of action accrues has not been defined by statute but has been the subject of judicial interpretation. Riley v. Presnell, 409 Mass. 239, 243 (1991). Ordinarily, actions in tort accrue at the time the person is injured. Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 741 (1978). To mitigate the unfairness of such a rule courts have developed a “discovery rule.” The discovery rule applies when the wrong is “inherently unknowable.” Olsen v. Bell Tel. Laboratories, Inc., 388 Mass. 171, 175 (1983). Under other formulations, in the absence of a governing statute the discovery rule tolls the statute of limitations until a plaintiff discovers, or reasonably should have discovered, that she has been harmed or may have been harmed by the defendant’s conduct. Phinney v. Morgan, 39 Mass.App.Ct. 202, 204 (1995). The formulation is in the alternative — a cause of action accrues when the plaintiff actually knows or when the plaintiff should have known of the cause of action. Riley, supra, at 244.
The discovery rule has been applied to actions for legal malpractice, Hendrickson v. Sears, 365 Mass. 83, 89-90 (1974); real estate fraud, Friedman v. Jablonski, 371 Mass. 482 (1976); medical malpractice, Franklin v. Albert, 381 Mass. 611, 618-19 (1980); psychotherapeutic malpractice, Riley v. Presnell, 409 Mass. 239 (1991); and incestuous child abuse by a nonperpetrator. Phinney, supra. The discovery rule does not require that a plaintiff have notice of a breach of duty before the cause of action accrues. Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990).
Whether the Discovery Rule Applies to this Action
I begin by assuming arguendo that the discovery rule applies to Doe’s action against Freeman, that is to an action by an adult resident of a residential group home facility against her one-on-one counselor (not her therapist) at that facility. See Phinney, supra at 204-05. Notwithstanding the availability and Doe’s access to a therapist at the home, because of the nature of the relationship of trust and confidence between the parties as counselor and resident, the same factors underlying application of the discovery rule to other types of tortious conduct support its application to tort claims arising out of the relationship between a counselor and resident of a group residential home. Of the factors addressed in Phinney, at least three arguably might apply here: alleged unawareness that the defendant committed a wrongful act at the time of its commission; the plaintiffs trust in the defendant; and the necessity of a triggering event which makes the plaintiff aware of the defendant’s potential liability.
Doe’s Claims Are Barred by the Statute of Limitations
Having determined to apply the discovery rule to Doe’s action only begins the inquiry. The question next arises whether her claims are barred because she has failed as a matter of law to show that she did not know or could not have known that she had been by harmed by Freeman’s conduct more than three years before commencing this action. Riley v. Presnell, 409 Mass. 239, 246 (1991). On this issue, Doe bears the burden *19 of proof. Id. at 243-44. If the defendant pleads the statute of limitations as a defense, and establishes that the action was brought more than three years after the time of the alleged injury, the plaintiff has the burden of proving facts that remove the case from the statutory limitation. Riley, supra at 244. In some instances the question of when a cause of action accrued is properly a question for the factfinder. Id. Where, however, the record reveals no factual dispute as to when the harm actually occurred, the court may decide as a matter of law whether the plaintiff, within the statutory period, had knowledge or sufficient notice that she was harmed and what the cause of harm was. See Riley v. Presnell, 409 Mass. 239, 243 (1991). Phinney v. Morgan, 39 Mass.App.Ct. 202, 209 (1995).
Here, each defendant has properly pleaded and established that the cause of action was brought more than three years from the time that Doe last had physical contact with Freeman and more than three years from the last instance in which Freeman served as an employee of Harbor Schools. Moreover, each has demonstrated that an essential element of Doe’s case is unlikely to be forthcoming at trial. That is, that Doe will be unable to prove facts removing her various causes of action from the statutory limitation.
From the summary judgment record in this case, it is clear that the discovery rule does not avail Doe in avoiding the statute of limitations. Doe commenced this action on January 23, 1997. Notwithstanding her assertions, including an opinion letter of a psychologist, it is evident from her own deposition that as early as June of 1993 (or November 1993 at the latest) Doe herself knew that she had been harmed or may have been harmed and that the cause of her harm was Freeman’s conduct. A reasonable person in Doe’s position would have concluded likewise. As noted earlier, either Doe’s actual knowledge or what a reasonable person in Doe’s position would have known suffices. Riley, supra at 244. One need not apprehend the full extent or nature of an injury in order for a cause of action to accrue. Olsen v. Bell Tel. Labs., Inc., 388 Mass. 171, 175 (1983).
Where the claim arises from the intentional infliction of emotional distress, the injury occurs on the date a plaintiff first experiences anxiety or distress which is the intended result of the defendant’s conduct. Quinn v. Walsh, Mass.App.Ct. (98-P-1019, July 14, 2000). Pagliuca v. Boston, 35 Mass.App.Ct. 820, 824 (1994). This rule has been narrowed to provide that ”[w]hen an injury . . . becomes manifest, the statute of limitations does not stay in suspense until the full extent, gravity, or permanence of that same injury or consequential disease is known.” Id. at 824-25, quoting from Gore v. Daniel O’Connell’s Sons, Inc., 17 Mass.App.Ct. 645, 649 (1984).
In cases where the emotional injury is said to have been caused by a defendant’s negligence, our courts have imposed the even narrower requirement that “[a] plaintiffs emotional distress must follow ‘closely on the heels of the negligent act.” Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 789 (1982), quoting from Ferriter v. Daniel O’Connell's Sons, Inc., 381 Mass. 507, 518 (1980). This rule is grounded in the recognized need to impose limits on the scope of liability with respect to claims involving emotional injuries, whether negligently or intentionally caused. See, e.g., Migliori v. Airborne Freight Corp., 426 Mass. 629, 631-33 (1998).[8]
Doe’s primary argument is that because of her background, which involved incidents of both physical and sexual abuse by others, her emotional need to trust and rely on Freeman made her unable to comprehend the connection between Freeman’s conduct and her emotional problems in the spring of 1993,' when the incidents of orsd sex occurred. Her deposition belies this contention.
Doe has acknowledged in deposition that she knew in the summer of 1993 that Freeman’s conduct was causing her harm. She has acknowledged in her opposition to this motion that she was aware that Freeman’s conduct was causing her harm as early as July 1993, when she told Freeman that they should stop seeing each other; and in November 1993, when she met Freeman at a Burger King restaurant and told him that she did not want to see him any more because he was causing her emotional problems. Thus, it is incontrovertible that Doe herself was aware in 1993, more than three years prior to commencement of this action on January 23, 1997 that she was suffering from harm and that Freeman’s conduct was the cause. Alternatively, a reasonable person in Doe’s position would have possessed sufficient information in June and November of 1993 to know that Freeman’s conduct, sexual relations between a married man of superior years in a position as counselor and a young adult resident of a group home, was likely to cause one or both of the parties emotional and other harm.
In Massachusetts, under the majority decision in Riley, the reasonable person standard has both subjective and objective components, analogous to third prong malice in the criminal law. See Commonwealth v. Sires, 413 Mass. 292, 294 (1992). However, the subjective components, those peculiar to Doe, must be components which are related to the complained of conduct. Riley v. Presnell, 409 Mass. 239, 245-46 (1991).[9] The reasonable person who serves as the standard in this evaluation ... is not a detached outside observer assessing the situation without being affected by it. Rather, it is a reasonable person who has been subjected to the conduct which forms the basis of the plaintiffs complaint... If such an initially reasonable person would, by reason of the experience forming the basis for the plaintiffs complaint, have his or her judgment altered in some way, such altered judgment then becomes the standard ... In other words, if the defendant’s conduct would, in an ordi *20 nary reasonable person, cause an injury which by its very nature prevents the discovery of its cause, the action cannot be said to have accrued. Accrual of the cause of action occurs when the ordinary reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience." Id. The standard is whether a reasonable person subjected to the conduct underlying Doe’s complaint would have been aware of the harm. Id. (emphasis supplied). If the defendant’s conduct (here Freeman’s alleged physical and sexual advances) would have altered a reasonable person’s judgment in some way, then that altered judgment becomes the standard, and the cause of action does not accrue until a reasonable person would have been aware that he/she had suffered harm. Id. The relevant inquiry is whether the sexual conduct of Freeman would prevent a reasonable person in Doe’s position from appreciating that Freeman’s conduct was causing her harm. However real the psychological or emotional harm to Doe from Freeman’s conduct, Freeman’s conduct would not prevent a reasonable person in Doe’s position from comprehending that engaging in sexual relations with a married man could cause her harm. Doe’s emotional vulnerability, unrelated as it was to the complained of conduct of Freeman, is not to be considered in determining whether Doe should have known of her cause of action against Freeman in 1993.
As offensive and morally reprehensible as Freeman’s alleged advances may have been, the measuring rod is not whether a person with Doe’s unique variations of psychological health would have recognized that the conduct was inappropriate, but whether a reasonable person subjected to Freeman’s conduct (engaging in sexual relations with a young but adult woman who was his charge) would have recognized that she had been harmed and that the cause of the harm was Freeman’s (and her) conduct. As noted, while Doe may not have been aware of the full extent of her damage in June 1993, she actually was aware that she had been harmed by Freeman’s conduct. Moreover, a reasonable person in her position would have possessed knowledge or sufficient notice that she had been harmed and that the cause of her harm was Freeman’s conduct. See Phinney v. Morgan, 39 Mass.App.Ct. at 202.
Statutes of limitations are “vital to the welfare of society. . . They promote repose by giving security and stability to human affairs. Franklin v. Albert, supra at 618, quoting Wood v. Carpenter, 101 U.S. 135, 139 (1879). That there must be limits to the time of accrual of actions of this type and that the statute of limitations serves a salutary purpose is evident from consideration of the consequences which would ensue if Freeman and Doe had established a more permanent relationship prior to breaking up. If Doe and Freeman had continued on in a relationship and lived together or later married, would harm have occurred in the 1993 actions? Alternatively, if Doe and Freeman had continued on in a relationship for many years and then the relationship had gone sour, could Doe maintain that until a breakup occurred (and she was no longer with Freeman) she had not been able to appreciate that Freeman’s actions in 1993 had caused her harm?
The position advanced by Doe for holding that her cause of action did not accrue until after the relationship with Freeman ended proves too much and would virtually destroy the statute of limitations in situations involving romantic relationships between consenting adults which may have begun in positions of inequality of power. Here, despite age differences, Doe and Freeman were each adults at the time of the complained-of conduct. Freeman was no longer Doe’s counselor after June of 1993. He was not her therapist. The conduct between Freeman and Doe which forms the basis of Doe’s cause of action occurred prior to January of 1994. Moreover, Doe knew as early as June of 1993, when she attempted suicide, that Freeman’s conduct (the physical and sexual advances and the relationship between her and him) was harmful to her.
Riley observes that however real the psychological and emotional barriers to confrontation may be, these cannot toll the statute of limitations when a plaintiff knew or should have know that she has been harmed by defendant’s wrongful conduct. Id. at 248. Here, Doe actually did confront Freeman and knew of the harm. Additionally, a reasonable person in her position would likewise have known of the harm. Consequently, the discovery rule does not apply and plaintiffs action is barred by the statute of limitations.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motions for summary judgment of Freeman and of Harbor Schools are ALLOWED.

G.L.c. 260, §2A provides in pertinent part: “Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues. ’’

Plaintiff was born on November 13, 1974.

Plaintiffs attempt to invoke the statute of limitations set forth in G.L.c. 260, §4C and its discovery rule and tolling provision is inapposite. That statute applies to “actions for assault and battery alleging the defendant sexually abused a minor.” There is no dispute that having been born on November 13, 1974, Doe was over 18 years of age and legally an adult at the time of alleged sexual encounters with Freeman in 1993.

“[W]here the mechanism by which injury comes about includes the psychological, both the class of plaintiffs and kinds of claims are greatly and predictably expanded . . . We have imposed relational, temporal, and spatial limits on the scope of liability for emotional harm . . . [which are] grounded in [the] practical need to draw a determinate line.against excessive liability . . . [W]e must acknowledge that these requirements of proximity are based more on the pragmatic need to limit the scope of potential liability, than on grounds of fairness or other imperatives of corrective justice.” Id.

“Individual variations in judgment, intellect or psychological health which are unrelated to the complained-of conduct are not considered. Only if a reasonable person in the plaintiffs position would have been able to discern the harm or the cause of action will the cause of action accrue and the limitations period begin to run.